UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOSHUA MACDAVID MONTEITH )<br>   a/k/a "GRITTY" ) | DOCKET NO. 3:21-cr-240<br><br>**FACTUAL BASIS** |

NOW COMES the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1. The defendant, Joshua MacDavid MONTEITH, also known as "Gritty," along with Terrell Devon FREEMAN and Yanalise Simone HODGE, as well as other co-conspirators, conspired to engage in a bank fraud scheme involving stolen business checks. During the fraud scheme, the defendants deposited the stolen checks into fraudulently created bank accounts and withdrew funds before the banks discovered the checks were stolen.

2. The bank fraud and mail theft scheme and conspiracy began as early as November 2020 and lasted through September 2021 in the Western District of North Carolina and elsewhere. The fraud scheme generally operated as follows:

a. the co-conspirators stole mail, including business checks, from U.S. Postal Service (USPS) collection boxes and business mailboxes in and around Charlotte, North Carolina, and elsewhere.

b. After obtaining business and personal checks from the stolen mail, co-conspirators often filed official business registrations for fictitious businesses using names that were substantially the same as the names of the payees on the stolen business checks.

c. The co-conspirators then opened bank accounts in the names of these fictitious businesses at financial institutions ("straw bank accounts") and deposited the stolen checks into the accounts. The defendants used the personally identifiable information ("PII") of actual persons, as well as fake or "synthetic" identities, on the counterfeit identification cards to open the bank accounts.

d. After the financial institutions credited the straw bank accounts with funds from the stolen checks, the co-conspirators withdrew cash from the accounts before the victim financial institutions discovered the fraud.

3. MONTEITH participated in the fraud scheme from at least January 2021 through September 2021 in and around Charlotte, and elsewhere, including South Carolina and Georgia.

4. Between January 9, 2021 and September 26, 2021, MONTEITH, on multiple occasions, used a stolen USPS key capable of opening mail collection boxes to steal mail from boxes located in Charlotte, North Carolina, and the surrounding area. The stolen USPS key was provided to MONTEITH by FREEMAN.

5. During the conspiracy, MONTEITH also deposited stolen checks into straw banks accounts in furtherance of the fraud scheme, including the following transactions:

a. On March 4, 2021, MONTEITH deposited a stolen $100,000 check payable to a financial services company into a straw bank account at a Bank of America branch in Charlotte, North Carolina.

b. On June 24, 2021, MONTEITH deposited a stolen $18,719.50 check payable to a produce company into a straw bank account at a BB&T (Truist) bank branch in the Charlotte, North Carolina.

c. On June 25, 2021, MONTEITH deposited a stolen $16,782 check payable to a produce company into a straw bank account at a BB&T (Truist) bank branch in Charlotte, North Carolina.

d. On July 15, 2021, MONTEITH deposited a stolen $6,463.70 check payable to an individual into a straw bank account at a First National Bank branch in Tega Cay, South Carolina.

6. MONTEITH and co-defendant HODGE worked closely together throughout the conspiracy. For example:

   a. On March 11, 2021, MONTEITH and HODGE were stopped in a vehicle by Charlotte-Mecklenburg Police Department (CMPD) officers. In the vehicle, CMPD officers seized two fraudulent driver's licenses with HODGE's face and different names, both of which were used in furtherance of the fraud scheme. Each of the fraudulent driver's licenses contained bar codes and holograms.

   b. On June 16, 2021, MONTEITH stole mail from a collection box in a rental vehicle that he and HODGE had together rented from a co-conspirator residing in Atlanta. MONTEITH and HODGE obtained rental vehicles for this purpose on at least three occasions.

   c. On or about July 15, 2021, HODGE recruited a co-conspirator to open a straw bank account in furtherance of the conspiracy. MONTEITH and HODGE later drove the co-conspirator to the bank. The co-conspirator opened a straw bank account and MONTEITH deposited the stolen check into the account.

   d. On or about July 29, 2021, MONTEITH and HODGE, along with FREEMAN and one other co-conspirator, were together in Atlanta, Georgia, in furtherance of the conspiracy.

7. On or about July 9, 2021, MONTEITH recruited a co-conspirator to open a straw bank account at First National Bank in furtherance of the conspiracy. MONTEITH's fingerprints were later located on the stolen $4,304.30 check deposited into the same straw bank account created at First National in Mint Hill, North Carolina.

8. During the conspiracy, MONTEITH kept gift cards, cash, and other items from the stolen mail.

9. On September 26, 2021, MONTEITH used the stolen USPS key to open the USPS collection box located at Ballantyne Station post office in Charlotte. Federal agents and CMPD officers immediately arrested MONTEITH after he opened the box in an attempt to steal the mail. Investigators located stolen mail in the vehicle MONTEITH arrived in at the scene of arrest, including 58 stolen checks, totaling $19,271.

10. On October 4, 2021, FREEMAN was arrested by federal agents in the Atlanta, Georgia area. In FREEMAN's vehicle, agents discovered approximately 1,514 stolen checks totaling approximately $1,513,350.

3

11. During the entire period of the conspiracy, co-conspirators deposited or attempted to deposit the funds from approximately 86 stolen checks into straw bank accounts, totaling approximately $3,075,409.[1]

12. From the time MONTEITH is known to have entered the conspiracy in January 2021 until his arrest on September 26, 2021, co-conspirators deposited or attempted to deposit the funds from more than 30 stolen checks into straw bank accounts, totaling approximately $1,339,617.[2] These checks were stolen from more than 10 persons/businesses.

13. The amount of intended loss was known to or reasonably foreseeable to MONTEITH was in excess of $1,500,000, but less than $3,500,000.[3]

14. There were at least 10 victims in this case that were known to or reasonably foreseeable to MONTEITH.

DENA J. KING
UNITED STATES ATTORNEY

_____
WILLIAM T. BOZIN
ASSISTANT UNITED STATES ATTORNEY

Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis, the Bill of Indictment, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Indictment, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis.

_____           DATED: 1/3/2022
S. Frederick Winiker, Attorney for Defendant

---

[1] These are the totals known to the Government at this time.
[2] These are the totals known to the Government at this time.
[3] The defendant reserves the right to argue that the appropriate USSG guideline range for intended loss that was reasonably foreseeable to the defendant is between $500,000 and $1,500,000.

4